IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
- DALLAS DIVISION -

| | | |
|---|---|---|
| KYRA McELVY, individually and on behalf of the ESTATE OF GREGORY McELVY, DECEASED, GREGORY McELVY (SR.), individually and on behalf of the ESTATE OF GREGORY McELVY, DECEASED, and as Next Friend of KYRA McELVY, And TINA McELVY, individually and on behalf of the ESTATE OF GREGORY McELVY, DECEASED, and as Next Friend of KYRA McELVY, | § § § § § § § § § § § | |
| Plaintiffs, | § § § | Civil Case No. _____ |
| v. | § § | JURY DEMANDED |
| SOUTHWESTERN CORRECTIONAL, LLC, d/b/a LASALLE  CORRECTIONS, LLC, and d/b/a LASALLE SOUTHWEST CORRECTIONS, LASALLE MANAGEMENT COMPANY, LLC, EDDIE WILLIAMS, KELLI  BURK, CHRIS ELLER, DANIELLE KACHO, JOANN RUSSELL,  LILLIAN DELAINE HINOJOSA, JOHN DOE 1-5, and JANE DOE 1-5, | § § § § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT - JURY DEMANDED

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Kyra McElvy, individually and on behalf of the Estate of Gregory McElvy, Deceased, Gregory McElvy (Sr.), individually and on behalf of the Estate of Gregory McElvy, Deceased, and as Next Friend of Kyra McElvy, and Tina McElvy, individually and on behalf of the

Estate of Gregory McElvy, Deceased, and as Next Friend of Kyra McElvy,("Plaintiffs"), hereby file this their Original Complaint–Jury Demanded, complaining of Southwest Correctional, LLC d/b/a LaSalle Corrections, LLC, and d/b/a LaSalle Southwest Corrections, LaSalle Management Company, LLC, Eddie Williams, Kelli Burk, Chris Eller, Danielle Kacho, Lillian Delayne Hinojosa, John Does 1-5, and Jane Does 1-5, as Defendants, and allege as follows:

<u>**INTRODUCTION AND STATEMENT OF CLAIMS**</u>

1.      Greg McElvey, 35 years of age, was incarcerated at the Johnson County Law Enforcement Center (hereafter "Enforcement Center") at mid-day on September 13, 2013, as a pre-trial detainee.   At the time of intake, he advised the personnel that he had last used heroin two days previously.   In addition to disclosure of his previous use of heroin, he also disclosed that he had asthma.  He was placed in a group cell.  On September 14, 2013, he began complaining that he was suffering from heroin withdrawal, had asthma, and could not breathe.  The nurse's aide who first spoke with McElvy about his complaints immediately attempted to have him transferred to the infirmary, but the staff failed to respond.  Another medical attendant spoke with McElvy, admitted that they had available the necessary medication to deal with withdrawal symptoms, but refused to administer the treatment.  She also failed to have McElvy transferred to the infirmary.  In between these visits, McElvy continued to complain of his inability to breathe and other symptoms.

2.      From September 14 through September 15, McElvy kept exhibiting numerous symptoms of withdrawal, including loss of control of bodily functions, nausea, and inability to breathe.  He repeatedly fell off of his bunk, and kept having to ask for clean clothes because he was vomiting and soiling himself.  He openly declared that he was dying and repeatedly asked for medical care.  Although he filled out and submitted the necessary form, he received no care.

**PLAINTIFFS' ORIGINAL COMPLAINT - JURY DEMANDED**                                    **Page 2**

Numerous personnel observed these conditions, both the officers in charge at his cell and the medical staff who were contacted, and yet failed and refused to take steps to get him needed medical care. Although McElvy's urgent need for medical care was obvious even to a layman, as part of the custom, practice, and standard policy at the Enforcement Center, the officers in charge and the medical staff exhibited repeated, ongoing, conscious and deliberate indifference to his condition and his pleas for help.

3.    For almost two full days, McElvy kept complaining of his symptoms and begging the officers on duty for help. He continued to vomit and soil his clothing, but the officers on charge made fun of him, laughed at him, told him to sleep it off, and refused to get him medical attention, knowing full well that he would only continue to suffer. He was threatened to be "written up" if he did not stop buzzing for attention to his condition and his need for care. Even when he stopped breathing altogether, the officers in charge delayed calling medical personnel. Eventually, McElvy was taken by Careflight to the hospital, where he was pronounced dead.

4.    Although one tragic loss of human life is bad enough, unfortunately McElvy's totally avoidable death was one of a series of unnecessary deaths resulting from the pattern, practice, custom and policy of LaSalle Corrections to refuse to provide necessary medical care for inmates, occasioned by deliberate indifference to human life at all levels. To date, this series of inmate deaths due to inadequate medical care has included at least the following:

| Name | Age | Date of Death | Location of facility |
|------|-----|---------------|----------------------|
| Michael G. Hill | 52 | October 18, 2010 | Jefferson County |
| Kyle Franklin Gavard | 48 | January 17, 2011 | Jefferson County |
| Butch Baltrip Silas | 28 | February 28, 2011 | Jefferson County |

| | | | |
|---|---|---|---|
| Ivan Allen | 69 | October 30, 2011 | Johnson County |
| Gregory McElvy | 35 | September 15, 2013 | Johnson County |
| Ronald Ray Beesley | 46 | June 2, 2015 | Johnson County |
| Michael Sabbie | 35 | July 21, 2015 | Bowie County |
| Morgan Angerbauer | 25 | July 21, 2016 | Bowie County |
| Denay Lauren Birnie | 27 | November 9, 2017 | Parker County |

In an attempt to divert attention away from its custom and practice of providing insufficient medical care for inmates, and to conceal the true cause of McElvy's death, LaSalle Corrections and the individual Defendants circulated the untrue account that McElvy had died from a heroin overdose.

5.      The daughter, mother and father of Gregory McElvy, as Plaintiffs herein, now seek judgment against Defendants for the untimely and unnecessary death of their father and son, which resulted from violations of his constitutional rights, transgressing all bounds of human decency, from Defendants' failure to meet his basic medical care needs, and their deliberate indifference to his life, health, comfort, and safety.

## PARTIES

5.      Plaintiff Kyra McElvy is the daughter and statutory beneficiary of Gregory McElvy, Deceased, pursuant to §71.001, TEX. CIV. PRAC. & REM. CODE, who is presently a minor and will not become eighteen (18) years of age until 2020.  She is an individual citizen and resident of Little Rock, Arkansas.  Pursuant to §16.001, TEX. CIV. PRAC. & REM. CODE,  the statute of limitations for the bringing of this action by Kyra McElvy has been tolled during her minority.

6.      Plaintiff Gregory McElvy (Sr.) is the natural father and a statutory beneficiary of Gregory McElvy, Deceased, pursuant to §71.001, TEX. CIV. PRAC. & REM. CODE.   Gregory McElvy

(Sr.) is an individual resident of Dallas County, Texas.  The statute of limitations for Gregory McElvy (Sr.) has been tolled due to fraudulent concealment, because he was advised that his son had died of a heroin overdose by representatives of LaSalle, and did not become aware until late 2018 of the true circumstances of his son's tragic death.

7.      Plaintiff Tina McElvy is the natural mother  and a statutory beneficiary of Gregory McElvy, Deceased, pursuant to §71.001, TEX.CIV.PRAC.& REM.CODE. Although she is a long time resident of Dallas County, Texas, she is presently residing in San Antonio, Bexar County, Texas. The statute of limitations for Tina McElvy has been tolled due to fraudulent concealment, because she was advised that her son had died of a heroin overdose by representatives of LaSalle, and did not become aware until late 2018 of the true circumstances of her son's tragic death.

8.      Each of such Plaintiffs brings this action on behalf of all statutory beneficiaries and as a statutory beneficiary of Gregory McElvy, Deceased, pursuant to §71.021, TEX.CIV.PRAC.& REM.CODE, since he died intestate.

9.      Defendant Southwestern Correctional LLC d/b/a LaSalle Southwest Corrections ("LaSalle Corrections") is a Texas Limited Liability Company doing business in this District and elsewhere in the State of Texas for the purposes of profit.  LaSalle Corrections, together with Defendant LaSalle Management LLC, operate the Enforcement Center under a contract with Johnson County.[1]   LaSalle Corrections may be served by serving its registered agent, Melissa Marie McConnel at 26228 Ranch Road 12, Dripping Springs, Texas 78620.

---

[1] LaSalle Southwest Corrections is a registered d/b/a of Defendant Southwestern Correctional, LLC, which is owned, controlled, and/or managed by LaSalle Management, LLC. Except where distinction is necessary, these parties are hereafter collectively referred to as "LaSalle".

10.     Defendant LaSalle Management Company LLC ("LaSalle Management") is a Louisiana Limited Liability Company doing business in this District for the purposes of profit, which is the parent corporation owning and directing LaSalle Corrections. LaSalle Corrections and LaSalle Management are sometimes collectively referred to herein as "LaSalle." Although LaSalle Management claims that it is separate and apart from LaSalle Corrections, on information and belief it is aware of the inhumane denials of Constitutional rights by LaSalle Corrections and does nothing to prevent the same, and the profits generated by LaSalle Corrections directly or indirectly benefit LaSalle Management and its shareholders. On information and belief, LaSalle Management does not maintain a registered agent in the State of Texas. LaSalle Management may therefore be served through the Texas Secretary of State by certified mail at Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079. The Texas Secretary of State is then requested to forward service to LaSalle Management's Louisiana registered agent, William K. McConnell, 192 Bastille Street, Suite 200, Ruston, Louisiana 71270.

11.     Defendant Eddie Williams is a Deputy Sheriff acting under the directions of the Sheriff of Johnson County, and is the Warden of the Enforcement Center. As such, he is responsible for all operations at the Enforcement Center. He may be served at the Johnson County Sheriff's Office, 1102 E. Kilpatrick, Cleburne, Johnson County, Texas 76031.

12.     Defendant Kelli Burk was a Registered Nurse with the title of Health Services Administrator, in charge of all medical care provided for inmates at the Enforcement Center. She is ultimately responsible for implementing and enforcing proper medical care provided for the inmates at the Center. If there is a breakdown in the communication of inmates' medical needs to

medical personnel and coordination of their response, she is the person responsible therefor.  She is an individual resident and citizen of the State of Texas, and may be served at the Johnson County Enforcement Center at 1800 Ridgmar, Cleburne, Johnson County, Texas 76031.

13.    Defendant Chris Eller was a nurse employed at the Enforcement Center at the time in question.  She personally observed McElvy's conditions, and became personally aware of the grave, life-threatening nature of his condition, and yet did nothing to assure that he would receive proper and timely medical care.  She is an individual resident and citizen of the State of Texas, and may be served at the Johnson County Enforcement Center at 1800 Ridgmar, Cleburne, Johnson County, Texas 76031.

14.    Defendant Danielle Kacho was a duty officer at the Enforcement Center during McElvy's brief but fatal incarceration.  She personally observed McElvy's withdrawal symptoms and heard his pleas for medical assistance, complaining that he was dying, and yet did nothing to assure that he would receive proper and timely medical care.  Rather than obtaining medical care for him, she made fun of him and refused to help.  She is an individual resident and citizen of the State of Texas, and may be served at at the Johnson County Enforcement Center at 1800 Ridgmar, Cleburne, Johnson County, Texas 76031, or at her last known address.

15.    Defendant Joann Russell was a duty officer at the Enforcement Center during McElvy's brief but fatal incarceration.  She personally observed McElvy's withdrawal symptoms and heard his pleas for medical assistance, complaining that he was dying, and yet did nothing to assure that he would receive proper and timely medical care.  Rather than obtaining medical care for him, she laughed and made fun of him,  refused to help, told him to go sleep it off, and threatened

to "write him up" unless he stopped buzzing for help. She is an individual resident and citizen of the State of Texas, and may be served at the Johnson County Enforcement Center at 1800 Ridgmar, Cleburne, Johnson County, Texas 76031.

16.    Defendant Lillian Delaine Hinojosa was a nurse's aide at the Enforcement Center. She personally examined McElvy and noted his serious condition, but did not take sufficient steps to assure that he received proper medical care. She was internally blamed for McElvy's death in an attempt to divert attention away from higher up employees at the Enforcement Center, and was forced to resign to make her a scapegoat for the manner in which inmates were and are treated at the Center. She is a citizen and resident of the State of Texas, and may be served with process at her home at 716 Wyche Court, Burleson, Tarrant County, Texas.

17.    Defendants John Does 1-5 and Jane Does 1-5 are placeholder defendants representing presently unidentified individuals, shareholders, and/or agents of Defendants who participated in the illegal activities and conduct alleged herein, or knowingly allowed the same to occur. Following discovery, they will be replaced with the correct names of the appropriate individuals.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to 42 U.S.C. §§1983 and 1988, 28 U.S.C. § 1331 (federal question), and § 1343 (civil rights). This Court has supplemental jurisdiction to consider Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because the same are interrelated to the Federal claims, and because 42 U.S.C.§1988 incorporates the Texas Wrongful Death Statute, §71.002, TEX.CIV.PRAC.& REM.CODE.

19.    Venue is proper in this district pursuant to 24 U.S.C. § 1391(b), as the events

complained of occurred in this district and division.

20.     This Court has personal jurisdiction over LaSalle Corrections and LaSalle Management because each are engaged in business in this district for the purpose of profit. This Court has personal jurisdiction over the individual defendants because they are employed in, and participated in the wrongful acts and omissions as alleged herein, in this District and Division. This Court has personal jurisdiction over the placeholder Doe defendants because each work, conduct business, and/or reside in this District.

21.     There were no probate proceedings arising from the death of Gregory McElvy, and none were necessary. Plaintiffs are the sole heirs of Gregory McElvy, and all of the statutory beneficiaries under §71.001, TEX.CIV.PRAC.& REM.CODE.

## **BACKGROUND FACTS**

### *a. Johnson County Law Enforcement Center*

22.     In March 2010, the previous operator of the Johnson County Law Enforcement Center, Community Education Centers, Inc., terminated its contract with Johnson County early because the contract was not profitable. In May, 2010, Johnson County selected LaSalle to oversee all operations of the Enforcement Center and entered into an all-encompassing management contract with the same. By such contract, Johnson County has sought to delegate all of its authority to comply with Tex. Local Gov't Code §§ 351.001, 351.041, and its obligations under the United States Constitution and laws, and the LaSalle Defendants assumed such responsibility.

19.     Pursuant to the contract, LaSalle receives a low, set-rate reimbursement for all medical care provided to the inmates. Therefore, on paper there is a provision for medical care, but in practice LaSalle saves money, and earns more profit, by not utilizing, or under-utilizing,

**PLAINTIFFS' ORIGINAL COMPLAINT - JURY DEMANDED**                    **Page 9**

professional medical care providers. One of the ways this is done is to under-staff the nursing staff. Another is to utilize persons who are not fully licensed to serve as employees at the Center.

### b. Gregory Richard McElvy

20. Gregory Richard McElvy was born in 1977, and for all of his life, he had lived in Texas.

21. On September 13, 2013, McElvy was arrested and booked into the Johnson County Law Enforcement Center. During intake, he disclosed that he had a history of drug use, and that he had taken heroin only two days before. He also disclosed that he had a history of asthma. At all material times, he was a pretrial detainee,

22. As alleged above, the day after intake, McElvy began experiencing heroin withdrawal, and so advised the medical staff. He also signed all necessary papers to consent to and request medical treatment. From that point onward, Defendants were on actual notice of his specific condition, and his request for medical treatment for that condition. Had the medical staff been given proper training, and advised of proper treatment of an inmate suffering from heroin witdrawal, they would have been able to diagnose the specific stages of his chronic condition and properly treat his condition, and thereby save his life. As soon as he reported his condition, he should have been placed in the infirmary and placed under constant monitoring and proper treatment, but he was not.

23. Compounding such failure to begin providing proper medical care at an early stage, due to actual awareness of the condition, and generally accepted medical practices and standards, the jailers on duty, due to lack of proper training, and the institutional deliberate indifference to the health, safety, and need for proper medical treatment for inmates, increasingly made fun of McElvy as his symptoms of heroin withdrawal worsened, and he repeatedly soiled himself, vomited, and

writhed about in agony.  When he buzzed for treatment and attention to his worsening symptoms, the officers on duty ridiculed McElvy, told him to "sleep it off," and threated him with retribution if he kept buzzing for help.  His painful and agonizing death shortly thereafter was made inevitable.

### c. Authority, Policies, and Customs at the Enforcement Center

24.     A pretrial detainee such as McElvy has a Federal Constitutional right to receive necessary medical care, which right flows from both the procedural and substantive Due Process guarantees of the Fourteenth Amendment.to the United States Constitution.  When an employee of a jail fails or refuses to provide needed medical care to a pretrial detainee due to deliberate indifference to the health or safety of the inmate, by refusing to provide needed medical care,  such person is violating the inmate's constitutional rights to needed, fundamental care.  The Supreme Court has recognized that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessisregarding that risk, and is a violation of that person's constitutional right to safety in his body and preservation of his life.

25.     Because of the custom and practice, and established policy, of deliberate indifference to the suffering and medical needs of inmates, and the practice of understaffing the medical staff, and use of untrained or poorly trained medical care employees and jail personnel, all of which were prevalent at the Johnson County Enforcement Center, and indeed throughout LaSalle Corrections, McElvy was put through untold agony of painful and debilitating withdrawal symptoms, continuing over an extended period of time, and worsening in a way visible to a person of ordinaty intelligence, which ultimately caused a painful death.

26.     The purposeful refusal to treat McElvy and mitigate the severe symptoms he was experiencing was an institutional response which was the epitome of deliberate indifference.  Not

only was the medical staff repeatedly advised in very specific terms of McElvy's condition and need

for treatment, and not only were there readily available treatments that could and should have been

timely administered to save his life, but the jailers on duty were repeatedly advised by him in his

agonized cries for help of his symptoms, of their cause, and of the need for medical intervention, and

responded with threats of punishment if McElvy kept pressing for help. Here, the symptoms and

their worsening progression would have lead a person of average intelligence and understanding to

call for medical treatment for him, rather than laughing at him. This purposeful refusal to provide

such medical attention to McElvy was, therefore, indicative of a systemic deliberate indifference

toward inmates' needed medical care that permeated LaSalle, from the lowliest nurses' aide to the

highest executive of the company.

27.    Here, the individual Defendants each exhibited their callous and deliberate

indifference to McElvy's need for immediate medical attention as follows:

✓    Defendant Eddie Williams was the Warden at the Enforcement Center, and was
ultimately responsible for all operations at the Jail. He had actual personal knowledge
of the series of deaths that had been occurring at the jail, and of reports of the specific
shortcomings in treatment that lead to the various inmate death. He therefore had
an affirmative duty to undertake reasonably necessary steps to improve the medical
care for inmates, but purposely refused to undertake any reforms. Therefore, his
failure to do so, in light of the clear reports that there were a number of inmate deaths
attributed to lack of treatment despite clear indications of the need to provide medical
care. Williams has expressly and/or implicitly adopted and enforced the policies,
procedures, and customs implemented by LaSalle in the operations of the
Enforcement Center. Despite actual awareness that these policies are unconstitutional
and jeopardize the safety of the inmates at the Enforcement Center, Williams
continues to enforce and implement such policies and customs, and has not used his
authority to modify or correct the ongoing deficiencies in such policies and customs
intention

✓    Defendant Kelli Burke, as the Health Services Administrator, was the highest level
person overseeing the provision of medical care for inmates. She had medical
training that made her aware of specific treatment and medications for the symptoms
of heroin withdrawal, and purposely failed and refused to provide training and

specific guidance to her staff to place inmates undergoing serious symptoms of drug withdrawal in the infirmary under ongoing monitoring and treatment. She had actual knowledge of prior failures to provide medical care for inmates that had lead to their deaths, and therefore had an affirmative duty to require proper training of the medical staff, and by failing to do so exhibited conscious indifference toward inmates and their needs for medical care.

✓   Defendant Chris Eller was a nurse employed at the Center, who was one of the first actually notified of McElvy's complaint of heroin withdrawal. See Exhibit "A" attached hereto. Despite existence of specific medical protocols in place at the Center, see Exhibit "B" attached hereto, she failed and refused to provide medication or placing him in the infirmary. Her failure to take such action, compounded by the fact that she later personally observed McElvy in worsened condition, demonstrated her deliberate indifference toward providing him with proper medical care.

✓   Defendant Danielle Kacho was a duty officer who directly and personally observed McElvy's deteriorating condition and repeated cries for help, but who instead of obtaining help for him made fun of him and told him to sleep it off. Such cavalier dismissal of McElvy's progressing fatal condition exhibited her conscious indifference toward his medical needs. Kacho has admitted that she was given little or not training by LaSalle, and therefore her attitude toward McElvy and her inattention to his needs was the direct result of LaSalle's institutional deliberate indifference toward inmate medical needs.

✓   Defendant Joann Russell was another duty officer who personally observed McElvy's condition and symptoms and was personally aware thereof. See inmate statement attached as Exhibit "C" demonstrating the personal knowledge of both Kacho and Russell. Her attitude in refusing to obtain medical help for McElvy is best described by the inmate statement attached as Exhibitd "D," "E," "F," and "G" attached hereto. As stated in the inmate statements recording their observations, Officer Russell was a "bitch" in her attitude toward McElvy, told him to sleep it off, and laughed at him even though she could observe his worsening symptoms and cries that he was dying. This action exhibited conscious indifference toward McElvy.

✓   Lillian Delaine Hinojosa was personally singled out by LaSalle and terminated because internally she was blamed for failing to obtain timely and proper medical care for McElvy. Therefore, LaSalle is estopped from denying her failures to provide proper case. However, the documentation and surrounding facts establish that Defendant Hinojosa's acts and omissions were part of the institutional conscious indifference of LaSalle toward the medical needs of inmates.

28.   Because of Defendants' actions, deliberate indifference, and purposeful inactions, which were a custom and practice of Defendants, McElvy underwent a series of painful and

debilitating symptoms that ultimately killed him, a man of 36 years of age.

Every aspect of the treatment, including the practices, policies, and customs, related to the minimal "medical care" provided at the Enforcement Center was grossly inadequate and horrendous. Defendants, acting together and in concert, have developed a minimalist approach to medical treatment designed to save money by denying or delaying medical treatment, with total disregard for the human consequences and the resulting pain, suffering, and, all too often, death.

29.     Sadly, history has shown that the callous and inhumane treatment of inmates at the Johnson County Enforcement Center is the norm and not the exception.  Defendants have allowed, for example, a woman in advanced stages of pregnancy to remain in jail rather being transferred to a hospital despite ongoing bleeding from her uterus, an inmate suffering from repeated seizures to fall repeatedly and suffer serious injuries without being given medical treatment, inmates who were diabetic suffering from misapplication of insulin with severe adverse reactions, but with no medical treatment, inmates with serious wounds and abscesses to go without medical attention or proper antibiotics, and an inmate complaining of chills and fever to go without blankets or medical attention and ultimately die.

30.     Defendants John Does 1-5 and Jane Does 1-5 represent the employees of LaSalle and/or Johnson County who were personally involved in the ongoing detainment of McElvy after his incarceration, and personally involved in his non-treatment.

31.     Defendants LaSalle Management and LaSalle Corrections have adopted a policy, custom, practice, and have engaged in an ongoing course of conduct, involving conscious

**PLAINTIFFS' ORIGINAL COMPLAINT - JURY DEMANDED**                                    **Page 14**

indifference to the medical needs of inmates so that such conduct has become their policy or custom, designed to prevent prisoners from receiving appropriate, constitutionally-mandated medical attention, solely to avoid the "unnecessary" expenses associated therewith. On information and belief, LaSalle's primary motivation in undertaking and implementing this policy is to maximize profits by limiting expenses for medical care and maintaining as little staff as possible. Such actions result in an unsafe and unfit jail environment and, as a matter of course, result in loss of life and unconstitutional pain and suffering.

32.    LaSalle has been cited by the Texas Commission on Jail Standards on multiple occasions for failing to provide appropriate medical care to patients, has been found to have inadequate medical records, and to have a policy and practice of falsifying records. This policy contributed, and ultimately was the proximate cause of the death of Mr. McElvy, as detailed above.

33.    LaSalle further has adopted a policy, custom, or has engaged in an ongoing course of conduct so that such conduct has become their policy or custom, whereby LaSalle agents do not attempt to investigate or obtain medical records related to its prisoners' medical conditions, even when put on actual notice by the prisoner that he or she suffers from a medical condition, and they do not seek proper examinations and treatment by doctors, simply in order to save money. LaSalle then improperly attempts to excuse and/or justify its failure to treat medical conditions because there is "insufficient documentation." These actions resulted in cruel and unusual punishment, and a gross deprivation of Mr. McElvy's constitutional rights, including even his right to life.

34..    Further, collectively, LaSalle, Williams, and Burk have failed to adequately train the staff at the Enforcement Center to safely undertake their duties. Specifically, the John and Jane Doe Defendants have either not been adequately trained to recognize serious medical conditions that are

beyond their expertise to treat and require referral to a doctor, or else are made so reluctant to incur medical expenses such as ordering diagnostic tests and/or referral to a doctor by Defendants' policies or practices of minimizing medical expenditures, that they jeopardize the health and even the lives of the inmates in their custody.  This failure to train, and/or excessive adherence to minimizing medical costs, constitutes deliberate indifference to the constitutional responsibilities of Williams, Burk, and LaSalle's attitude toward  the inmates at the Enforcement Center. It is further another proximate cause of the death of Mr. McElvy.

35.    Plaintiffs have otherwise complied with all conditions precedent for the filing of this action.

## CAUSES OF ACTION

### I.

### FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT AND RIGHT TO REASONABLE MEDICAL CARE

36.    Plaintiffs incorporate by this reference the allegations of paragraphs 1 through 35 above, as if the same were fully set forth herein.

37.    This is a cause of action under 42 U.S.C. § 1983 for violations by the Defendants, of McElvy's rights and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution, and by other laws of the United States,  including the Fifth Amendment to the United States Constitution, by failing to provide a safe jail environment or proper medical treatment to Mr. McElvy.   Pursuant to such Constitutional provisions and laws, all prisoners, including Mr. McElvy, have a constitutionally protected right to receive appropriate medical care while incarcerated, and to be incarcerated in a safe jail facility, and to have their lives protected and preserved.

38..    The failure of the Defendants to provide proper medical care to Mr. McElvy was malicious, reckless, or constituted deliberate and conscious indifference as part of Defendants' patterns and practices.  Mr. McElvy had an objectively serious medical need that was readily apparent to all staff at the Enforcement Center who had the duty to monitor Mr. McElvy's confinement, and even to other inmates. Mr.McElvy repeatedly placed Defendants and other staff members on notice that he was suffering from a serious medical condition that required immediate treatment. Despite actual knowledge by the Defendants that Mr. McElvy was obviously suffering from serious medical issues, as described in detail above, no Defendant provided proper medical care to Mr. McElvy,  or referred him to a doctor, until it was too late.

39.    Mr. McElvy's repeated cries that he was dying and needed immediate medical care, which were ignored and in fact laughed at, establish malice on the part of the Defendants, creating liability for punitive or exemplary damages.

40.    The policies and procedures of LaSalle,  as carried out by Williams and Burk, as also detailed above, constitute deliberate indifference and are otherwise unconstitutional.   LaSalle has implemented and effectuated policies and customs that prevent inmates in its  care from receiving appropriate medical care or treatment. These policies and customs prevent inmates suffering from ongoing conditions and those suffering from emergent health threats from receiving necessary health care. Mr. McElvy had both ongoing conditions requiring treatment and an obvious medical emergency, yet received no treatment for such medical issues. These policies, and the training or lack of training behind the same, also represent deliberate and conscious indifference of the Defendants, as the policies are designed to maximize profits and  limit costs, but which proximately resulted in the callous and barbaric treatment received by Mr. McElvy, causing his painful and untimely death.

41.    As a result, the deliberate indifference to the duties to provide minimal medical treatment as required by the United States Constitution was institutionalized both at the individual and corporate level, from the direct, hands-on personnel, to the upper level management, conscious only to the financial aspects of providing medical care, and purposely indifferent toward the human needs of the inmates, such as Mr.McElvy.   All of the John and Jane Doe Defendants exhibited deliberate and conscious indifference by their actions and inactions, despite Mr. McElvy's clear and desperate need for adequate medical attention and treatment.  Further, such indifference was caused by the corporate and managerial attitudes, and the established policies of LaSalle.  Such policies were the motivating force behind the conscious and deliberate indifference of the individual employees and the individual Defendants, and proximately caused Mr. McElvy,  done under color of state law.

42.    Defendants were each acting under the color of state law at all times relevant to this case.   Defendants therefore had constitutional duties to provide a safe jail environment for Mr. McElvy, , protect him from harm, and provide him with medical care and treatment and wholly failed to uphold any such duties. Defendants' actions and treatment of Mr. McElvy, and other prisoners at the Enforcement Center, are clearly unconstitutional.

43.    Plaintiffs therefore demand judgment, seeking all available forms of redress, compensation, and punishment available against Defendants, jointly and severally, for such Constitutional violations, including award of actual, consequential, and indirect damages, including loss of business,  plus damages for mental anguish and emotional distress, pain and suffering, punitive damages, and attorneys' fees and expenses, to the maximum extent allowed by law.

## II.

## WRONGFUL DEATH

44.    Plaintiffs incorporate by this reference the allegations of paragraphs 1 through 43 above, as if the same were fully set forth herein.

45.    To the extent necessary or applicable, Plaintiffs bring their causes of action as wrongful death causes of action pursuant to the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem. Code 71.002 *et seq.* and the Constitution of the State of Texas.  Plaintiffs are the surviving spouse, child, and parent of Gregory McElvy,  and his only heirs at law. The Defendants in this case are individuals or business entities, whose acts proximately caused injury to McElvy,  resulting in his death.  Had Mr. McElvy survived, he would have been entitled to bring this action for injury against Defendants. Additionally, Defendants' negligent actions proximately caused Plaintiffs to suffer damages, including but not limited to, loss of consortium, mental anguish, and special damages consisting of loss of income from McElvy.

46.    Plaintiffs therefore demand judgment, seeking all available forms of redress, compensation, and punishment available against Defendants, jointly and severally, for such constitutional violations, including award of actual, consequential, special, and indirect damages, including loss of business, plus damages for mental anguish and emotional distress, pain and suffering, and punitive damages.

## III.

## NEGLIGENCE

47.    Plaintiffs incorporate by this reference the allegations of paragraphs 1 through 46 above, as if the same were fully set forth herein.

48.    This is a cause of action for negligence brought against LaSalle and the individual Defendants.

49.    At all relevant times, LaSalle owed a duty of care to Mr. McElvy and, as he was a prisoner in the Enforcement Center, LaSalle was responsible for his well being. LaSalle, through the actions or inactions of the individual Defendants, breached such duty of care by acting deliberately indifferent to the medical needs of Mr. McElvy, and by negligent actions of the individual Defendants and LaSalle as alleged herein, which negligence was the proximate cause of Mr. McElvy's death. The damages proximately resulting from the breaches of duty by LaSalle and the individual Defendants are severe and massive, for which Plaintiffs demand recovery.  Additionally, Defendants' negligent actions proximately caused Plaintiffs to suffer damages, including but not limited to, loss of consortium, mental anguish, and special damages consisting of loss of income due to the inability to continue McElvy's employment.

50.    Plaintiffs therefore demand judgment, seeking all available forms of redress, compensation, and punishment available against LaSalle and the individual Defendants  for such constitutional violations, including award of actual, consequential, special, and punitive damages, plus damages for pain and suffering, and mental anguish and emotional distress.

## IV.

### GROSS NEGLIGENCE

51.    Plaintiffs incorporate by this reference the allegations of paragraphs 1 through 50 above, as if the same were fully set forth herein.

52.    This is a cause of action for gross negligence brought against  Defendants.

53.    As set forth in detail above, the individual Defendants had actual knowledge that Mr.

McElvy was suffering from heroin withdrawal.  All of these factors demonstrated that the individual Defendants were aware of the extreme degree of risk faced by Mr. McElvy, considering the probability or likelihood of serious injury to him.

54.    LaSalle is vicariously liable for the grossly negligent acts of the individual Defendants because the person(s) in charge of making decisions to request proper treatment were the ones to whom the duties to provide healthcare were absolutely entrusted, and were therefore vice principals for that purpose. LaSalle also placed wholly in the hands of the on-site personnel, the individual Defendants, the responsibility for providing lay medical care, and the determination when to refer inmates to a doctor or proper medical facility for treatment and therefore they were acting as vice principals of LaSalle for this additional reason.  The actions and inactions of the individual Defendants were within the course and scope of their employment, and were implicitly authorized by LaSalle because in purporting to treat Mr. McElvy, the individual Defendants were carrying out the policy and mandate of LaSalle to minimize medical expenses.  On information and belief, LaSalle has taken no remedial action, other than one nurse's aide,  and therefore has  approved and ratified the grossly negligent conduct of the individual Defendants

55.    Plaintiffs therefore demand judgment, seeking all available forms of redress, compensation, and punishment available against LaSalle Corrections,  LaSalle Management, and the individual  Defendants  for such constitutional violations, including award of actual, consequential, and indirect damages, plus damages for mental anguish and emotional distress, and punitive damages. Additionally, such Defendants' negligent actions proximately caused Plaintiffs to suffer damages, including but not limited to, loss of consortium, mental anguish, pain and suffering, and special damages consisting of loss of income due to the inability to continue McElvy's employment.

## DAMAGES

56.     Plaintiffs incorporate by this reference the allegations of paragraphs 1 through 55 above, as if the same were fully set forth herein.

57.     Plaintiffs demand judgment for compensatory, punitive, presumed, special, and nominal damages, including both actual and consequential damages, loss of business damages, and damages for mental anguish pain and suffering, and emotional distress, against Defendants, jointly and severally,  in the maximum amounts allowed by law, as set forth above.   As the actions and omissions of Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Plaintiffs and were the proximate cause of the wrongful death of McElvy,  Plaintiffs assert claims under 42 U.S.C. § 1983, common law, the Texas Tort Claims Act, and the wrongful death and survivorship statutes as specifically pled herein.

58.     In particular, Plaintiffs, both individually, as wrongful death claimants, and in their capacity as heirs at law to the Estate of Gregory McElvy, are entitled to and demand recovery for all recoverable damages, including but not limited to the following: past physical pain and suffering of Gregory McElvy, past mental anguish of McElvy,  funeral and/or burial expenses associated with the death of Gregory McElvy; past and future mental anguish for each living Plaintiff; lost income for Gregory McElvy and lost inheritance for Plaintiffs; past and future loss of companionship, society, services, and affection of Gregory McElvy  for each living Plaintiff; punitive damages in an amount decided by the trier of fact; and special damages.

## ATTORNEYS' FEES

59.     Plaintiffs are also entitled to and demand recovery of all reasonable and necessary

attorneys' fees, costs, and expert witness fees available pursuant to 42 U.S.C. §1988, or as otherwise allowed by law, for which they demand recovery.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues that may be tried or submitted to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kyra McElvy, individually and on behalf of the Estate of Gregory McElvy, Deceased, Gregory McElvy (Sr.), individually and on behalf of the Estate of Gregory McElvy, Deceased, and as Next Friend of Kyra McElvy, and Tina McElvy, individually and on behalf of the Estate of Gregory McElvy, Deceased, and as Next Friend of Kyra McElvy, pray that Defendants Southwest Correctional, LLC d/b/a LaSalle Correctional, LLC, and d/b/a LaSalle Southwest Corrections, LaSalle Management Company, LLC, Eddie Williams, Kelli Burk, Chris Eller, Danielle Kacho, Lillian Delayne Hinojosa, John Does 1-5, and Jane Does 1-5 be cited to appear and answer, and that upon final trial, Plaintiffs be granted judgment for:

a.   all economic damages resulting from the above-described wrongful and illegal conduct of Defendants, including but not limited to, damages for the funeral and/or burial expenses associated with the death of Gregory McElvy and the loss of future income or services of Gregory McElvy;

b.   all physical or emotional damages resulting from the above-described wrongful and illegal conduct of Defendants, including but not limited to, damages for past physical pain and suffering of Gregory McElvy, past mental anguish of Gregory McElvy, past and future mental anguish for each living Plaintiff, lost earnings and inheritance, past and future loss of companionship, society, and affection of Gregory McElvy for each living Plaintiff;

c.   all other compensatory damages resulting from the above-described wrongful and illegal conduct of Defendants;

d.   all special damages resulting from the gross negligence of Southwestern Correctional LLC d/b/a LaSalle Southwest Corrections, LaSalle Management LLC, and the individual Defendants;

e.     all punitive or exemplary damages necessary to make Defendants an example to the public and to deter the Defendants and others from engaging in conduct similar to that which formed the basis of this suit;

f.     all reasonable and necessary attorneys' fees, costs, and expert witness fees available under law;

g.     pre-judgment and post-judgment interest in the maximum amount allowed by law; and

h.     any such further relief, whether legal or equitable, to which Plaintiffs may be entitled.

Respectfully submitted,

LAW OFFICES OF LIPPE & ASSOCIATES

By:      /s/  Emil Lippe, Jr.
         Emil Lippe, Jr.
         State Bar No. 12398300
         Merit Tower
         12222 Merit Drive, Suite 1200
         Dallas, Texas  75251
         Phone: 214-855-1850
         Fax:    214-720-6074
         emil@texaslaw.com

ATTORNEY FOR PLAINTIFFS